WESTERN SURETY COMPANY *v.* Jimmy
GATES

73-25                                        494 S.W. 2d 479

Opinion delivered May 14, 1973

*Shackleford & Shackleford,* for appellant.

*Haley & Claycomb,* for appellee.

CONLEY BYRD, Justice. Appellee Jimmy Gates, the surface owner of some land in Sec. 28, T. 16 S, R. 12 W, and Franklin Oil Company, Inc., as the owner of some oil and gas leases entered into a contract for the building of roads and the clearing of oil well drilling sites on the land. It was agreed that each oil drilling site would be 200 ft. by 200 ft. and that Franklin would pay $400 for each site. The contract further provided that Gates and Franklin would mutually agree on the location and width of all tributary roads to each well site. Texas Continental Oil Company, Inc., assignee of Franklin entered the land to drill oil wells. During the drilling of the third well, Gates barred Texas' right of ingress and egress. Texas filed suit alleging a breach of the contract and asked for a temporary injunction. Gates defended on the ground that Texas was taking more land than was necessary to serve its purposes. Appellant Western Surety Company became the surety on two temporary injunctions issued pursuant to Ark. Stat. Ann. § 32-206 (Repl. 1962), the bonds being in the total amount of $4,400.00. The last temporary injunction order provided that the two bonds together with prior cash payments to Gates represented adequate deposits to protect the interest of Gates and reserved the issue raised by Gates in his answer until such time as a determination could be made. After Texas had drilled eleven wells and had gone into bankruptcy, Gates pursued his cause for the excessive use of his land against the surety bonds issued by appellant. The chancellor found that Gates's damages exceeded the amount of the bonds and entered judgment for the full amount of the bonds.

For reversal appellant, contends:

"I. THERE HAS BEEN NO BREACH OF THE INJUNCTION BOND.

A. There has been no final decision that the injunction ought not to have been granted.

B. Neither dissolution of the injunction nor dismissal of the action for want of prosecution establish breach of the bond condition.

## II. THE TRIAL COURT AWARDED DAMAGES NOT RECOVERABLE UNDER THE BOND OBLIGATION.

A. Damages awarded were not result of the act enjoined.

B. Bond was not conditioned on the payment of damages allowable under 'Road Building Contract.'

## III. THE AWARD WAS EXCESSIVE AND NOT SUPPORTED BY THE EVIDENCE."

The record shows that Gates in the construction of well sites greatly exceeded the 200 X 200 feet agreed to in the contract. The clearing around one well site was as much as 375 feet long and 300 feet wide. The testimony is to the effect that a reasonable tributary road would be from 12 to 16 feet in width but that some of the roads constructed by Texas were 75 feet wide. To some wells, Texas constructed more than one tributary road. The witnesses estimated that the value of the land in a cleared condition was $50 per acre as compared to $275 to $280 per acre with the timber on it at the time the temporary injunctions were issued. Texas did not consult with Gates as to the width and location of the roads.

Under points I and II, appellant argues that there was no breach of the injunction bond and that the court wrongfully awarded judgment for damages to Gates's land as a result of Texas' activity and not as a result of the issuance of the injunction,—*i.e.* appellant argues that the injunction bond was not an indemnity agreement nor was it insurance for damages that Gates sustained as a result of Texas' entry on the land under the road building contract.

Ark. Stat. Ann. § 32-206 (Repl. 1962), provides:

"In every case, the court or judge granting an injunction shall specify in the order therefor an amount, for which the party obtaining it shall give security in a bond to the party enjoined, before the

injunction shall become effectual; which amount shall be sufficient to cover all the probable damages and costs that may be occasioned by the injunction. The court or judge may prescribe the effect of the bond, so as to secure to the party enjoined the damages to which he may become entitled, if it is finally decided that the injunction ought not to have been granted..."

As we view the evidence in this case it shows that Texas was ignoring the terms of the road building contract at the time Gates barred its right of ingress and egress and that it continued to do so after the issuance of the temporary injunction. Since the termporary injunction permitted Texas to continue to violate the terms of the road building contract, we conclude that the evidence shows that it was wrongfully issued. In so holding we point out that the issues here are not those regulated by law between the surface holder and the lessee of mineral interests but that the issue here involves a matter about which the parties had contracted. Under the terms of that contract the size of the drilling site was fixed and Gates was entitled to be consulted as to the location and width of the tributary roads. Of course without the injunction Gates could have insisted upon Texas' compliance with the road building contract. Under the injunction he was helpless to interfere.

Neither do we find any merit in the contention that the damages are excessive. Appellant in making this argument does so on the basis that the court erred in stating the amount of land taken. As we understand appellant's argument, it uses the wrong formula in calculating the excess area used in the well sites.

Affirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice. Concurring. I concur. I cannot agree, however, that the evidence shows that the injunction was wrongfully issued for the reasons stated in the majority opinion. Nevertheless, I conclude that it was. The record seems to me to be silent on

that point, except that it is clear that the dissolution of the injunction was based upon the dismissal for want of prosecution of Texas Continental Oil Company's original action for injunction. It further appears that there was a proper basis for this action.

Our pertinent statutes relating to injunction bonds are Ark. Stat. Ann. §§ 32-206, 32-207 (Repl. 1962), which are Sections 302 and 303 of the Civil Code of 1869. This code was an adoption of the Kentucky Code. Consequently, decisions of the Kentucky Court of Appeals construing their code after its adoption in this state are highly persuasive. It was held in Kentucky that dismissal of the petition upon which an injunction had been issued constitutes a judicial determination that the injunction ought not to have been granted and gives rise to a cause of action against the obligor on the injunction bond. *Pugh* v. *White*, 78 Ky. 210 (1879). One of the authorities cited for this holding was *Dowling* v. *Polack*, 18 Cal. 625 (1861), in which the dismissal was for want of prosecution. In the California case the court said that the judgment of dismissal had the same effect upon the rights of the parties as would have resulted from a hearing on the merits. Other authorities supporting the court's conclusion were cited, including *Loomis* v. *Brown*, 16 Barb. 325 (N.Y.Sup.Ct. 1853), in which it was held that the dismissal of a complaint, included by force of the term itself, a determination that the party was not equitably entitled to the injunction.

I would follow the holding of the Kentucky court and say that the dismissal of the action for injunction constituted a determination that the injunction based thereon should not have been granted. In spite of the bankruptcy of the company bringing the action, there was evidence that someone had conducted operations on appellee's land after the bankruptcy and, as the chancellor remarked, there must have been a successor to the original plaintiff's rights under the contract.

I do not consider *Blakeney* v. *Ferguson*, 18 Ark. 347, cited by appellant to be governing here for several reasons. It is a pre-Civil Code decision. It is based upon a statute having different language. The court there simply

held that the failure of the court dissolving the injunction in that suit to award damages barred a common law action on the bond.

I am aware of the fact that our statute governing dismissals for want of prosecution provides that the dismissal is without prejudice to a future action and that such a dismissal is not a decision on the merits. Nevertheless, our statutes provide for the award of damages on an injunction bond, whenever an injunction is dissolved. Ark. Stat. Ann. § 32-307 (Repl. 1962). The right to damages is not limited by the right of the plaintiff to institute a new suit upon the same cause of action.