## Illinois Surety Company v. Hendrick, et al.

(Decided May 23, 1916.)

### Appeal from McCracken Circuit Court.

Appeal and Error—Supersedeas—Dismissal of Appeal—Liability of Surety for Costs.—Where a defendant superseded a judgment by giving a bond with surety thereon, pursuant to section 748 of the Civil Code of Practice, to the effect that the appellant would pay to appellee all costs and damages that might be adjudged

against the appellant on the appeal, and also that he would satisfy and perform the whole of the judgment in case it should be affirmed, and the appeal was dismissed by the Court of Appeals, with damages, because appellant railed to prosecute his appeal within the time prescribed by section 738 of the Civil Code of Practice, the dismissal of the appeal was a virtual affirmance of the judgment, and made the surety upon the supersedeas bond liable for the debt.

D. G. PARK for appellant.

A. M. NICHOLS, JOSEPH R. GRAGAN, J. K. HENDRICK, HAL S. CORBETT and WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER---- Affirming.

In 1913, the appellees John K. Hendrick and Hal S. Corbett, composing the law firm of Hendrick & Corbett, recovered a judgment in the McCracken circuit court against James E. Wilhelm and others, for $1,200.00. Wilhelm and his co-defendants prosecuted an appeal to the Court of Appeals and executed a supersedeas bond, with the Illinois Surety Company as surety thereon.

The bond substantially followed section 748 of the Civil Code and bound the appellant "to pay to the appellees all the costs and damages that may be adjudged against the appellants on the appeal, and also that they would satisfy and perform the whole of the judgment above stated, in case it should be affirmed, and any judgment or order which the Court of Appeals might render, or order to be rendered by the inferior court, not exceeding the amount or value of the whole of the judgment aforesaid."

By a supersedeas issued pursuant to the bond, the execution of the judgment of the circuit court was stayed pending the appeal. But Wilhelm and his co-defendants having failed to timely prosecute their appeal, the Court of Appeals dismissed it with costs, and ten per cent damages thereon, pursuant to sections 738 and 764 of the Civil Code.

Hendrick & Corbett thereupon instituted this action against the Illinois Surety Company, surety on said supersedeas bond, to recover $1,200.00, the amount of the original judgment, with interest, and ten per cent damages thereon which had been awarded by this court upon the dismissal of the appeal.

For answer the surety company denied that it was liable under the covenants of its bond for anything more than the ten per cent damages and the costs awarded by this court upon the dismissal of the appeal; and, that amount, aggregating $144.25, it has paid into court, after having tendered it to the plaintiffs.

The theory of the defense is, that by the terms of the bond the surety could only be made liable for the principal sum of the judgment in case the judgment should be affirmed, or this court should direct a judgment to be entered by the circuit court; that the appeal was not affirmed, but was dismissed only; and therefore, that the surety's liability is limited to the damages and costs awarded by this court upon the dismissal of the appeal.

The plaintiffs insist, however, that the dismissal of the appeal by this court was an affirmance of the judgment, within the meaning of the bond and section 748 of the code under which it was given, and fixed the liability of the surety thereunder.

The circuit court took the plaintiff's view of the case, and gave judgment against the surety for $1,200.00, with interest; and from that judgment the surety company prosecutes this appeal.

Section 748 of the Civil Code reads as follows:

"A supersedeas shall not be issued until the appellant cause to be executed before the clerk of the court which rendered the judgment, or the clerk of the Court of Appeals, by one or more sufficient sureties, to be approved by such clerk, a bond to the effect that the appellant shall pay to appellee all costs and damages that shall be adjudged against the appellant on the appeal; also, that he will satisfy and perform the judgment appealed from, if it should be affirmed, and any judgment or order which the Court of Appeals may render, or order to be rendered by the inferior court, not exceeding in amount or value the original judgment, and all rents, or hire, or damages to property, during the pendency of the appeal, of which the appellee is kept out of possession by reason of the appeal."

Harrison v. Bank of Kentucky, 3 J. J. M. 375, is directly in point. In that case, the Bank of Kentucky recovered a judgment against Howard and others for $790.00, and the defendants prosecuted an appeal to this court and stayed the judgment by a supersedeas bond

with Harrison as surety thereon, conditioned to pay "in case said judgment shall be affirmed in said Court of Appeals."

For failure to prosecute the appeal it was dismissed in the Court of Appeals, with damages and costs; and, thereupon the bank instituted its action of debt against the sureties upon the appeal bond, and recovered a verdict and judgment. From that judgment Harrison prosecuted an appeal.

It will thus be seen that the facts in Harrison v. Bank of Kentucky, *supra,* were substantially the same as the facts in this case, the question there being whether the dismissal of the appeal in this court was such an affirmance, in the meaning and legal import of the condition of the bond sued on, as to make the obligors therein liable.

The court was of opinion that according to a rigidly literal construction of the language employed in the bond, some doubt might be entertained; but it was clearly of the opinion that such a construction would defeat the main object of the law, in requiring the execution of an appeal bond. And, it was therein pointed out that if the construction claimed by the surety should be followed, in no suit on such a bond taken in the language of the statute could a recovery be effected if the sureties therein were disposed to defeat it.

In sustaining the judgment against Harrison the surety, the court said:

"The main if not the only object in requiring an appeal bond, is to secure to the plaintiff in the judgment, the payment of such judgment, with costs and damages, when awarded, unless it should be reversed by the appellate court; and to attain that object, such must be considered to be its legal effect, in every case, where it has been executed in the words of the act, or in other words substantially the same. In such cases we must remember that, '*qui haeret in litera, haeret in cortice;*' we must regard substance and not form, or the law will have been in vain; and under that view of it, the dismission must be considered as a virtual affirmance of the judgment. A different interpretation of the law, would lead to fraud and injustice, subjecting creditors, in many instances, to the entire loss of their debts. Appeals would be taken without an expectation of successful prosecution, by principals, and the bonds entered into by sureties without fear of responsibility."

Again, in Pugh's Admr. v. White, 78 Ky. 210, Pugh had obtained a judgment against Sallie May for $105.00, for which an execution had been issued and levied in July, 1870, on a mare and colt belonging to Sallie May. In August, 1870, she, filed a suit asking for a new trial and an injunction restraining Pugh from proceeding further in the collection of his judgment until the disposition of the questions raised in the application for a new trial. She executed a bond, with White and Jenkins as sureties, conditioned to pay Pugh "the damages not exceeding $210.00, which he may sustain by reason of the injunction in this case, if it is finally decided that said injunction ought not to have been granted."

Upon the execution of this bond, the injunction was granted and remained in force until August, 1875, when the suit was dismissed by the circuit court because it had not been revived as required by law. The order dismissing Sallie May's petition on which the injunction had been granted, was made on the motion of Pugh's administratrix, he having died in 1873, and no steps having been taken by Sallie May in her suit, from the filing of the petition in August, 1870, up to the time of its dismissal in August, 1875.

In 1876, Pugh brought his action against White and the other sureties on the injunction bond, whereupon the sureties answered, denying that there had been any order of the court dissolving the injunction, and asserting that it had not been finally decided by the court that the injunction "ought not to have been granted."

The circuit court dismissed the petition, and Pugh appealed, the question being whether there had been a breach of the covenant in the bond.

In reversing the judgment, this court said:

"That appellees must be judged by the terms of their covenant is not questioned. The only inquiry is as to whether the order dismissing the petition upon which the injunction was obtained amounts to a judicial finding that the injunction ought not to have been granted. If such was the effect of the order, the judgment must be reversed; and if it was not, the judgment must be affirmed.

"Such bonds have, in other States, been construed so as to accomplish the purpose for which the several statutes designed them, viz.: To protect the defendant from any wrongful interference with his rights, and to

reimburse him for all damages and costs incurred by reason of an injunction improperly issued. (High on Injunctions, section 946.)

"It is immaterial whether the action of the court is in the shape of a judgment upon the merits or a voluntary dismissal or discontinuance of the case. (Coates v. Coates, 1 Duer. 644; Sherman v. New York Central Mills, 11 Howard, Pr.; Methodist Church v. Barker, 18 N. Y. 463.)"

In Pugh v. White, *supra*, the court reviewed the authorities and concluded that the dismissal of a petition in which an injunction had been obtained was a judicial determination that the injunction should not have been granted, and that a cause of action at once arose against the obligors in the injunction bond.

The ruling in Pugh v. White, *supra*, was followed in Alexander v. Gish, 88 Ky. 19.

The reason upon which these decisions were based was that the judgment of dismissal terminated the proceedings; and, by its legal operation and effect set aside and discharged the injunction. It was the final action of the court operating directly upon the injunction and destroying the foundation upon which it rested. Dowling v. Polack, 18 Cal. 627.

While Pugh v. White, *supra*, and the cases therein cited involved damages upon injunction bonds, the principle announced by the decisions in those cases is the same as in the case before us involving a supersedeas bond. In either case the question was whether the discontinuance of an action or appeal released the obligors in a bond under which, by the strict letter of its terms, no liability should be incurred except upon the action of the court affirming the judgment in the one case, or determining in the other that the injunction ought to have been granted.

The Harrison case, *supra*, is directly in point; and the reasoning in Pugh v. White, *supra*, is equally applicable and controlling.

The conclusions reached in those opinions were sound; otherwise an appellant might stay a judgment against him until the case was called for trial, and then dismiss it, or cause it to be dismissed through some intended default, and thereby defeat the liability which his bond was given to secure.

Judgment affirmed.